## G. C. Outten Grain Company, Appellee, v. C. H. Grace and J. H. Uppendahl, Appellants.

### Gen. No. 7,909.

SPECIFIC PERFORMANCE—*enforcement of contract of sale of growing corn crop for delivery when matured.* No grounds for equitable relief are presented by a bill alleging the sale to complainant by defendant of the latter's growing crop of corn, and breach of defendant's agreement to deliver the same on "husking days," the complainant having an adequate remedy at law in an action for money had and received as to the sums paid by him for such corn, and the damages being neither uncertain nor difficult of ascertainment.

Appeal by defendants from the Circuit Court of Macon county; the Hon. JAMES S. BALDWIN, Judge, presiding. Heard in this court at the October term, 1925. Reversed and remanded with directions. Opinion filed December 31, 1925.

WHITLEY & FITZGERALD, for appellants.

LAWRENCE C. WHEAT and W. J. CAREY, for appellee.

Mr. Justice Crow delivered the opinion of the court.

The record presents for review a decree rendered by the circuit court against appellants, defendants in the circuit court. Stripped of unnecessary verbiage, the bill averred that appellee, a corporation, was engaged in the business of buying and selling grain, and that appellant Grace was engaged in the occupation of farming. That on September 8, 1922, appellee purchased from Grace the corn then growing and maturing at the stipulated price of 42 cents per bushel, the corn to be delivered on "husking days"; that appellee delivered its memorandum of such sale to Grace and paid him as the purchase price of said corn the sum of $2,418.48. It is further averred that Grace agreed to deliver the corn to appellee at its elevator at Hervey City on husking days but afterwards asked for an extension of time for delivery on account of road conditions; that he promised to crib the corn and take care of it until he could make delivery and that the extension was agreed to by appellant, and that he did not deliver the corn although the time had long since expired.

It is charged in the bill that as a consequence of the breach of his agreement to deliver corn under the circumstances, appellant became a trustee for appellee and held the corn in trust for its use and benefit. It is further charged that notwithstanding the sale of the corn by Grace in violation of his duty and in fraud of complainant's rights, he was at the filing of the bill "about to or has pretended to sell said corn to J. H. Uppendahl, and is about to or has delivered it to him, and if any such corn is so delivered, the purchase money therefor should be required to be paid to your orator and the said Grace be compelled to deliver the remainder of such corn to your orator."

The relief prayed is for delivery of the specific corn sold and in default of the delivery of any portion of it that Grace be required to pay to appellee its "dam-

ages occasioned by such breach of contract and violation of his trust." It is further asked that if Uppendahl had received any of the corn that he be required to pay to complainant, appellee, the value thereof.

A demurrer, general and special, was interposed to the amended bill and was overruled. Answer was filed by Grace denying the principal averments of fact in the bill, and most of the conclusions. He denied the equity of the bill and prayed the same relief as if he had pleaded or demurred. Uppendahl also answered, denying the principal facts averred against him. The cause was referred to the master who took the evidence and pursuant to the order of reference reported his conclusions and recommended a decree. The master found the facts substantially as averred in the bill. He also found that the evidence does not show Grace to be insolvent. Exceptions to the report and recommendations having been overruled, a money decree was entered against appellant and other provisions were made in the decree upon contingencies we deem immaterial to notice.

The preceding statement is so extended as to show the nature of the controversy. The conclusion we reach renders it unnecessary to state many of the other facts appearing in the record. The first point made by counsel for appellants is that a court of equity had no jurisdiction of the case presented by the bill. Decided cases and treatises on the equitable jurisdiction are cited by them in support of the contention. Opposing this contention, counsel for appellee cite section 71, chapter 121a, Cahill's Revised Statutes. They contend that the section is a legislative relaxation of the old rule against equitable aid by specific performance in sales of personal property in cases like that now presented.

To understand the section referred to, its history as well as its text must be noticed. The title of the act embracing this section is "An Act to make uniform

the law relating to the sale of goods.'' It became a law in 1915. It is one of a number of acts fostered by the American Bar Association, the purpose of which is to make uniform the law of the states adopting them. Many of the states have adopted it. It is a codification of the law concerning the sale of goods. It, with all the others, was formulated by the Committee on Uniform Laws of the American Bar Association. This particular Act was written by Williston, the author of the great American works on Contracts and on Sales. What is now stated in terse form in a code was formerly found in standard treatises stating the law of remedies under contracts of sales under varying conditions of fact. The second edition of Williston's treatise on Sales is not only a treatise, but is a commentary on this Act.

The section of the Act relied on makes no change in the application of the remedy by specific performance from what it was before. It does not give the remedy where it did not exist before. Before the statute was enacted, specific performance might be compelled where there had been a sale of ''specific or ascertained goods,'' or under other well-defined circumstances. Therefore the contention now made in support of the decree for damages for failure to deliver the corn is unsound, unless the remedy would be available independently of the statute invoked. Williston on Sales, sec. 602, commenting on this section of the Uniform Sales Act, says:

''If damages are an adequate remedy, a court of equity will never grant specific performance, and it has been held, with perhaps too great stringency, that for breach of contracts for the sale of goods damages are, as a rule, an adequate remedy. Where, however, a chattel is unique or not purchasable in the market, specific performance has been granted, as for slaves, works of art, heirlooms and property valuable for

sentimental reasons, vessels, valuable documents of various kinds.''

In support of the last proposition he cites *McMullen v. Vanzant*, 73 Ill. 190. The author deprecates the jurisdiction as limited, but until greater latitude of equitable jurisdiction has been authoritatively extended, we must abide by the old landmarks.

The first proposition of law stated by appellee's counsel is that a bill for specific performance of a contract lies, although there may be a remedy at law, if it is not an adequate remedy. *McMullen v. Vanzant*, 73 Ill. 190, is cited as supporting the rule. The want of jurisdiction to afford the relief was urged. Mr. Justice Breese wrote the opinion, in the course of which he said, as quoted by counsel:

· ''In very many of the bills filed for specific performance, actions at law could be maintained for damages, yet a party has never been heard to object that equity has no jurisdiction.''

This dictum of that great judge no longer holds true. In *Anderson v. Olsen*, 188 Ill. 502, also cited by counsel, two propositions involved in this case were announced, as disposing of the case for specific performance of a contract to sell a patent, which is personal property. The first proposition was concisely stated in the syllabus: ''An objection to the jurisdiction of a court of equity on the ground of an adequate remedy at law may be taken by answer after a demurrer to the bill upon that ground has been overruled.'' The second was: ''Equity will not specifically enforce a contract for the sale of personal property, such as a patent, if compensation in damages furnishes an adequate remedy at law.'' Without extending this opinion by quotation from that, written by Mr. Justice Hand, it is sufficient to say the reasons supporting it are irrefutable. *Parker v. Garrison*, 61 Ill. 250, relied upon to support the decree in this case, is cited in support of the second proposition in the *Anderson* case. The

ground of inadequacy and the limitation of the rule
authorizing a decree for specific performance of the
sale of personal property as stated is the presence of
"some element or feature in it to show that the relief
at law might not be adequate, as where the thing con-
tracted for has some special value to the vendee."
The *Anderson* case presented features much stronger
in favor of the equitable relief than the case at bar.
The possibilities of a patent are much greater and the
adequacy of monetary value much less easy of ascer-
tainment than that of a crib of corn not shown nor
averred to possess any peculiar value. In *Whitney v.
Burr,* 115 Ill. 289, specific performance of a contract
to sell a patent was allowed under the peculiar facts
shown.

Adverting to the *McMullen* case, *supra,* it was one
presenting the ideal elements for the exercise of the
strong arm of a court of equity. The McMullens, hus-
band and wife, while estranged, agreed to separate and
live apart. Vanzant had married their only daughter.
The McMullens, owning a tract of land while living to-
gether, had sold it to him and for which he executed
his note. After the separation, the husband wishing
to make provision for his wife, arranged with Vanzant
to execute two notes in lieu of the first one made. This
was done and one of the notes for $1,600, payable nine
years after date and bearing 10 per cent interest pay-
able annually, was delivered to Mrs. McMullen by her
husband. They lived apart for a time. The son-in-law
induced his mother-in-law to believe that her husband
would by some means deprive her of the note. He told
her he had consulted an attorney who advised him that
her husband could deprive her of the note, and induced
her to assign it to him. He agreed to keep it and at
the proper time return it to her or give her a new note
for the same amount bearing the same rate of interest
and payable at the same time the old note was to be
paid. Relying on the promise, she gave it to him.

Having possessed himself of it he refused to return it to her or give her a new note but claimed he had purchased the first note from her, paid for it, and that it was his property. In the bill by the McMullens, who had become reconciled, stating the facts, the prayer was that defendant be decreed to pay her 10 per cent annually on the amount of the note and all interest that had accrued thereon, and that the decree be made a lien on the defendant's real estate.

The circuit court dismissed the bill for want of equity. The Supreme Court reversed it and remanded it with directions to enter a decree requiring appellee (defendant) to perform his contract with her by executing a new note of the same tenor and effect as the one destroyed by him within a reasonable time to be fixed by the court, and in default that he be held in contempt and dealt with accordingly. In support of the judgment of reversal, the court held that while an action at law would lie, it might not be an adequate remedy. Therefore they went to the heart of the matter by compelling him to execute a new note in lieu of the one he had destroyed, and "of the same tenor and effect." Being a purchase money note for real estate it possessed a value in equity a mere judgment might not possess. It was due several years hence, bore a good rate of interest and for that reason had a value for the holder not possessed by a mere judgment at law. Then, too, defendant claimed he had purchased and paid for the note. It was essential to her rights to have that question determined presently, while all the parties to the transaction were alive. There is no analogy between that case and this now before us, and therefore is not authority for appellee nor against the contention of appellant.

Parker v. Garrison, 61 Ill. 250, cited by appellee, was begun by a bill in equity and arose out of a contract for the purchase from Parker by Garrison of a tract of land. Garrison went into possession and raised

3,000 bushels of corn and 400 bushels of oats on the land. Being unable to carry out the purchase agreement, Garrison prevailed on Parker to release him from the purchase, with the agreement that Parker should treat him as a tenant and receive from him as a tenant one-half of the crops raised that year but all to be paid in corn. Garrison delivered to grain storage people 600 bushels of corn, storing it in his own name, and was hauling the remainder and storing it in the same way. Garrison was insolvent and the bill averred he was intending to defraud Parker out of his rent. All were made parties to the bill. It prayed that the storage people be restrained from delivering the grain to or paying Garrison therefor and that he be restrained from selling or mortgaging the grain. Demurrer to the bill having been sustained and the bill dismissed, the case was reviewed by the Supreme Court.

All that is held in the case is that the court below should have sustained the bill as an injunction bill. No other relief appears to have been sought. The ground of decision was, not that it was a proper case for specific performance, but on account of the insolvency of Garrison, complainant would lose his remedy if the storage company paid him for the corn or if he disposed of it. What is said in the opinion about executing a trust is not necessary to be said. What is further said equally lacks the character of judicial expression to make it authority to be relied on. The latter expression is that the mere contract for sale and delivery of a chattel cannot, as would a contract for sale in case of land, create a trust. But it is as strong authority against appellee as the other is for him. The case of *Ames v. Witbeck,* 179 Ill. 458, is one clearly involving interests in land, a complicated controversy between numerous parties with regard to the real estate transaction there presented and a clear case of trust in the proper sense of that term. We may ap-

propriately apply to it the observation of Chief Justice Mulkey in *Cohn v. Mitchell*, 115 Ill. 124 (131), with regard to *McMullen, supra,* "the case has but slight bearing, if any, on the one before us." In that case the elementary doctrine was announced with regard to specific performance of contracts relating to personal property. The doctrine is that a court of equity will not decree the specific performance of a contract relating to personal property unless there is some element or feature in it showing that the relief at law is not adequate,—as where the measure of damages resulting from the nonperformance of the agreement is uncertain or difficult to ascertain, or where the thing contracted for has to the complainant some intrinsic or special value.

There is nothing in this case rendering the ascertainment of damages difficult or uncertain. Appellee paid Grace for the corn. An action for money had and received would lie and as compensation for retaining the money legal interest would be allowed. Other counts and other grounds of action are available if that is not. There is no ground for equitable relief presented. Other errors are complained of but we do not consider them because it is unnecessary.

The decree of the circuit court is reversed and the cause remanded with directions to dismiss the bill.

*Reversed and remanded with directions.*